UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

———————————

No. 21-1177

———————————

ROBERT R. CUSHING, individually and in his capacity as the
Minority Leader of the N.H. House of Representatives; DAVID
COTE; KATHERINE D. ROGERS; KENDALL SNOW; PAUL
BERCH; DIANE LANGLEY; CHARLOTTE DILORENZO; N.H.
DEMOCRATIC PARTY,

Plaintiffs-Appellants

v.

SHERMAN PACKARD, in his official capacity as
Speaker of the New Hampshire House of Representatives

Defendant-Appellee

———————————————————————

On Appeal from the United States District Court for the
District of New Hampshire

———————————————————————

**PETITION FOR REHEARING EN BANC**

OFFICE OF THE NEW HAMPSHIRE
ATTORNEY GENERAL

By:  Anthony J. Galdieri, No. 117548
     Senior Assistant Attorney General
     Samuel R.V. Garland, No. 1189913
     Jennifer S. Ramsey, No. 1190982
     Assistant Attorneys General
     Civil Bureau
     33 Capitol Street
     Concord, N.H.  03301-6397
April 19, 2021     (603) 271-3650

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ................................................................... ii

TABLE OF AUTHORITIES ............................................................ iii

RULE 35(b)(1) STATEMENT ......................................................... 1

REASONS FOR GRANTING THE PETITION ............................. 4

    I.    The panel's abrogation analysis conflicts with Supreme Court precedent. ................................................................. 4

    II.   Whether the ADA and Rehabilitation Act abrogate legislative immunity is a question of exceptional importance. ...................................................................... 12

    III.  Alternatively, the panel should have remanded this matter to district court to determine in the first instance whether Congress had the power to abrogate legislative immunity under the circumstances presented in this case. ........................................................................ 18

CONCLUSION .............................................................................. 21

CERTIFICATE OF COMPLIANCE ............................................. 22

CERTIFICATE OF SERVICE ...................................................... 23

# TABLE OF AUTHORITIES

Page

**Cases**

*Atascadero State Hospital v. Scanlon,*
 473 U.S. 234 (1985).................................................8, 9, 11, 12

*Bartell v. Lohiser,*
 215 F.3d 550 n.1 (6th Cir. 2000).....................................2, 17

*Bogan v. Scott-Harris*,
 523 U.S 44 (1998)........................................................... 10, 13

*Briscoe v. LaHue,*
 460 U.S. 325 (1983)............................................................ 1, 5

*Chappell v. Robbins*,
 73 F.3d 918 (9th Cir. 1996)......................................... 2, 7, 16

*Cushing v. Packard,* __ F.3d __,
 2021 WL 1310839 (1st Cir. Apr. 8, 2021)...............1, 9, 16, 17

*Dellmuth v. Muth,*
 491 U.S. 223 (1989)................................................................ 7

*Duffy v. Freed,*
 452 F. App'x 200 (3d Cir. 2011) ........................................ 2, 17

*E.E.O.C. v. Wash. Suburban Sanitary Comm'n,*
 632 F.3d 174 (4th Cir. 2011)................................................. 15

*Fitzpatrick v. Bitzer,*
 427 U.S. 445 (1976)............................................................... 10

*Hispanos Unidos v. Gov't of U.S. Virgin Islands,*
 314 F. Supp. 2d 501 (D.V.I. 2004) .................................... 2, 17

*Hutto v. Finney,*
 437 U.S. 678 (1978).............................................................. 12

*Kilbourn v. Thompson,*
 103 U.S. 168 (1880)............................................................. 19

*Latino Pol. Action Comm., Inc. v. City of Bos.,*
 581 F. Supp. 478 (D. Mass. 1984)..................................... 2, 17

*Nat'l Ass'n of Soc. Workers v. Harwood,*
    69 F.3d 622 (1st Cir. 1995) ............................................ 19, 20

*Nemcik v. Fannin*, No. 18-cv-05120-JST,
    2019 WL 720993 (N.D. Cal. Feb. 20, 2019) ............................ 3

*Pierson v. Ray*,
    387 U.S. 547 (1967)............................................................ 1, 5

*Pulliam v. Allen*,
    466 U.S. 522 (1984).........................................................passim

*Quern v. Jordan*,
    440 U.S. 332 (1979)......................................................... 5, 8, 9

*Romero-Barcelo v. Hernandez-Agosto*,
    75 F.3d 23 (1st Cir. 1996) .................................................... 15

*Stebbins v. Hannah*, No. 4:15-cv-00436-JLH-JJV,
    2015 WL 5996295, at *3 (E.D. Ark. Sept. 1, 2015) .......... 3, 18

*Stebbins v. Hannah*, No. 4:15-cv-00436-JLH-JJV,
    2015 WL 5999787 (E.D. Ark. Oct. 14, 2015) ........................ 18

*Supreme Court of Virginia v. Consumers Union of U. S., Inc.*,
    446 U.S. 719 (1980).........................................................passim

*Tenney v. Brandhove*,
    341 U.S. 367 (1951).........................................................passim

*Town of Barnstable v. O'Connor*,
    786 F.3d 130 (1st Cir. 2015) ................................................ 10

## Other Authorities

Fed. R. App. P. 35(b)(1)(A)................................................................ 1

Fed. R. App. P. 35(b)(1)(B)................................................................ 1

## United States Code

29 U.S.C. § 794(b)(1)(A)–(B) .................................................. 8

42 U.S.C § 1973.................................................................... 19

42 U.S.C. § 12131(1)(A) ........................................................ 8

## Legislative Record

132 Cong. Rec. S15100-01 (daily ed. Oct. 3, 1986)........................ 11

H.R. Conf. Rep. No. 93-500 (1973)................................................ 12

H.R. Rep. No. 94-1558 (1976) ...................................................... 6

S. Rep. 93-318 (1973) .................................................................. 12

S. Rep. No. 101-116 (1990) .......................................................... 11

S. Rep. No. 94-1011 (1976) ............................................................ 6

## RULE 35(b)(1) STATEMENT

The panel concluded that Congress abrogated legislative immunity through a "broad statement applying the [ADA or Rehabilitation Act] to state governments." *Cushing v. Packard*, __ F.3d __, 2021 WL 1310839, at *4 (1st Cir. Apr. 8, 2021). This conclusion directly conflicts with Supreme Court precedent. *See* Fed. R. App. P. 35(b)(1)(A). The Supreme Court has emphasized that federal courts cannot infer the abrogation of common-law immunity doctrines from broad statutory language alone. *See, e.g., Pulliam v. Allen*, 466 U.S. 522, 529 (1984); *Briscoe v. LaHue*, 460 U.S. 325, 334 (1983); *Pierson v. Ray*, 387 U.S. 547, 555 (1967); *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951). En banc review is accordingly necessary to bring this Court's decisions back in line with controlling authority.

This case also involves a question of exceptional importance. Fed. R. App. P. 35(b)(1)(B). Under the panel's decision, legislative immunity no longer appies to ADA or Rehabilitation Act challenges to state, regional, or local legislative acts performed anywhere in the First Circuit. This outcome promises an increase in such

challenges and the attendant burden they will place on defendants and courts. It also threatens to embroil federal courts in political disputes over state legislative procedures even when they are agreed upon and adopted by an overwhelming majority of the legislative body. Notably, legislative immunity is designed to protect against these outcomes. *See Tenney*, 341 U.S. at 376–78.

Additionally, the panel's decision appears to be the first time *any* federal court has found a congressional act to abrogate legislative immunity. Several federal courts, including the Ninth Circuit, have rejected similar arguments for abrogation made under other federal statutes. *See, e.g.*, *Chappell v. Robbins*, 73 F.3d 918, 923 (9th Cir. 1996); *Hispanos Unidos v. Gov't of U.S. Virgin Islands*, 314 F. Supp. 2d 501, 505 (D.V.I. 2004); *Latino Pol. Action Comm., Inc. v. City of Bos.,* 581 F. Supp. 478, 483 (D. Mass. 1984). Multiple federal courts have likewise rejected arguments that the ADA and Rehabilitation Act abrogated other immunity doctrines. *Duffy v. Freed,* 452 F. App'x 200, 202 (3d Cir. 2011) (unpublished); *Bartell v. Lohiser*, 215 F.3d 550, 555 n.1 (6th Cir. 2000); *Nemcik v. Fannin*, No. 18-cv-05120-JST, 2019 WL 720993, at *3 (N.D. Cal.

Feb. 20, 2019), *aff'd*, 797 F. App'x 319 (9th Cir. 2020); *Stebbins v. Hannah*, No. 4:15-cv-00436-JLH-JJV, 2015 WL 5996295, at *3 (E.D. Ark. Sept. 1, 2015), *report and recommendation adopted*, No. 4:15-cv-00436-JLH-JJV, 2015 WL 5999787 (E.D. Ark. Oct. 14, 2015). The panel's decision is in tension with these cases.

For all of these reasons, en banc review is warranted in this case. Accordingly, the full court should vote to grant this petition and rehear this case en banc.

## REASONS FOR GRANTING THE PETITION

**I.     The panel's abrogation analysis conflicts with Supreme Court precedent.**

Under controlling Supreme Court precedent, Congress may only abrogate absolute legislative immunity, if at all, by clearly expressing an intent to do so. This has been clear since at least *Tenney v. Brandhove*, when the Court reasoned:

> Did Congress by the general language of [§ 1983] mean to overturn the tradition of legislative freedom in England by Civil War and carefully preserved in the formation of State and National Governments here? Did it mean to subject legislators to civil liability for acts done within the sphere of legislative activity? Let us assume, merely for the moment, that Congress has constitutional power to limit the freedom of State legislators acting within their traditional sphere. That would be a big assumption. But we would have to make an ever rasher assumption to find that Congress thought that it had exercised that power. These are difficulties that we cannot hurdle. The limits of [§ 1983] were not spelled out in debate. We cannot believe that Congress—itself a staunch advocate of legislative freedom—would impinge on a tradition so well grounded in history and reason by covert inclusion in the general language of [§ 1983].

341 U.S. at 376. Thus, the Court rejected an "attempt to interpret the word 'person' in § 1983 as a withdrawal of the historic immun-

ity of state legislators." *Quern v. Jordan*, 440 U.S. 332, 342–43 (1979) (citing *Tenney*, 341 U.S. at 376).

Since *Tenney*, the Court has reiterated that common-law immunities cannot be abrogated by implication through general statutory language. In *Pierson v. Ray*, the Court relied on *Tenney* to emphasize that "Congress would have specifically so provided had it wished to abolish [absolute judicial immunity]." 387 U.S. at 555 (citing *Tenney*, 341 U.S. 367). In *Briscoe v. LaHue*, the Court quoted *Tenney* to conclude that § 1983 did not abrogate the common-law immunity enjoyed by witnesses, noting that the immunity was "'a tradition so well grounded in history and reason' that we cannot believe that Congresses impinged on it 'by covert inclusion in the general language before us.'" 460 U.S. at 334 (quoting *Tenney*, 341 U.S. at 376). Similarly, in *Pulliam v. Allen*, the Court emphasized that "common-law principles of legislative and judicial immunity were incorporated into our judicial system" and "should not be abrogated absent clear legislative intent to do so." 466 U.S. at 529.

In *Consumers Union*, the Supreme Court illustrated the type of legislative record required find a congressional intent to abrogate legislative immunity. There, the Court noted that it had previously held in *Hutto v. Finney*, 437 U.S. 678 (1978), that Congress intended to waive Eleventh Amendment immunity from attorney's fees under § 1988 "based on express legislative history" reflecting that intent. *Consumers Union*, 446 U.S. at 738. The Court had noted in *Hutto* that the House Report for § 1988 stated that "'the 11th Amendment is not a bar to the awarding of counsel fees against state governments,'" and the Senate Report contemplated that attorney's fees would "'be collected either directly from the [state] official, in his official capacity, from funds of his agency or under his control, or from the State . . . government (whether or not the agency or government is a named party).'" 437 U.S. at 694 (quoting H.R. Rep. No. 94-1558, at 7 n.14 (1976); S. Rep. No. 94-1011, at 5 (1976)). The Court indicated in *Consumers Union* that a "similar" legislative record would be needed to find congressional

intent to abrogate absolute legislative immunity, but that no such record existed. *See* 446 U.S. at 738–39.[1]

As the Ninth Circuit has observed, these decisions establish a "clear statement rule" for "determining whether a common-law immunity has been abrogated." *Chappell*, 73 F.3d at 923. Under that rule, abrogation of legislative immunity does not occur without "sufficient evidence in the statute or legislative history to show a specific 'clear legislative intent' to waive immunity." *Id.* (quoting *Pulliam*, 466 U.S. at 529). Accordingly, courts should "presume that Congress is aware of the common-law background against which it legislates, and that it does not intend to abolish all common-law immunities absent an express directive to retain them." *Id.* at 924. Courts are "required by *Pulliam* to find a clear indication that Congress affirmatively intended to abrogate immunity." *Id.*

---

[1] Following these decisions, the Supreme Court has observed that "[l]egislative history generally will be irrelevant to the judicial inquiry into whether Congress intended to abrogate the Eleventh Amendment." *Dellmuth v. Muth*, 491 U.S. 223, 230 (1989). The Speaker reserves the right to ask the Supreme Court to extend this observation to legislative immunity in the event certiorari is sought in this case.

The progression of the Supreme Court's Eleventh Amendment jurisprudence further illustrates this point. In *Atascadero State Hospital v. Scanlon* ("*Atascadero*"), the Supreme Court held that general language in the Rehabilitation Act did not abrogate Eleventh Amendment immunity. *See* 473 U.S. 234, 242–47 (1985), *superseded by* 42 U.S.C. § 2000d-7(a) *as recognized in Lane v. Pena*, 518 U.S. 187, 198 (1996). In reaching this conclusion, the Court rejected the assertion that Congress abrogated Eleventh Amendment immunity by providing "remedies for violations of § 504 by '*any* recipient of Federal assistance." *Atascadero*, 473 U.S. at 245 (emphasis in original). The Court acknowledged that California was "a recipient of federal aid under the statute," but concluded that "[a] general authorization of suit in federal court is not the kind of unequivocal statutory language sufficient to abrogate the Eleventh Amendment." *Id.* at 245–46. The Court specifically relied on *Quern v. Jordan*, *see Atascadero*, 473 U.S. at 246, in which the majority had applied the reasoning in *Tenney* to conclude that Congress had not intended to abrogate Eleventh Amendment immunity when it passed § 1983, *see Quern*, 440 U.S.

at 342–43. The Court's subsequent reliance on *Quern* in *Atas-cadero* demonstrates that the type of general statutory language at issue in this case does not evince a "clear legislative intent" to abrogate legislative immunity. *Pulliam*, 466 U.S. at 529.

The panel's conclusion that Congress could rely on a "broad statement applying [the ADA and Rehabilitation Act] to state governments to abrogate . . . legislative immunity," *Cushing*, 2021 WL 1310839, at *4, conflicts with the "clear statement rule" embodied in *Consumers Union*, *Tenney*, *Pulliam*, *Pierson*, and *Briscoe*. The statutory language in question does not evince a clear congressional intent to permit suits challenging conduct within the sphere of legitimate legislative activity that Supreme Court precedent requires. Rather, the panel's reliance on generalized language reflects the type of analysis the Supreme Court has consistently rejected in favor of a clear statement rule. En banc review is necessary to resolve the conflict with controlling precedent the panel's decision creates.

This remains true even if the statutory language in question *might* support an inference that Congress intended to abrogate

9

Eleventh Amendment immunity. *Cf. Fitzpatrick v. Bitzer*, 427 U.S. 445, 447 (1976) (inferring that Congress intended to abrogate Eleventh Amendment immunity for claims under Title VII by making them applicable to a State as an employer). The Supreme Court made clear in *Consumers Union* that congressional intent to abrogate Eleventh Amendment immunity does not *ipso facto* reflect a clear intent to waive absolute legislative immunity. 446 U.S. at 738–39. And unlike Eleventh Amendment immunity, which is enjoyed only by certain categories of actors—namely, States and their instrumentalities, *see Town of Barnstable v. O'Connor*, 786 F.3d 130, 137 (1st Cir. 2015)—legislative immunity turns on the nature of the challenged act *regardless* of who performs it, *Bogan v. Scott-Harris*, 523 U.S 44, 54–56 (1998). Thus, a generalized statement that a statute applies to a certain category of actors (e.g., States or state governments) does not answer the more specific question whether Congress intended the statute to also extend to actions performed within the legislative sphere to which legislative immunity has historically and traditionally applied. *See Tenney*, 341 U.S. at 376. It is only in the latter context,

when Congress "specifically . . . provide[s] [that] it wished to abolish" legislative immunity, that abrogation might be found. *See Pierson*, 387 U.S. at 555.

Notably, neither the panel nor the plaintiffs have identified any other statutory text or legislative history indicating that Congress intended the ADA or Rehabilitation Act to abrogate legislative immunity. The Speaker's own review of the legislative history has likewise revealed no suggestion that Congress contemplated legislative immunity when it passed the ADA and Rehabilitation Act. The legislative history of the ADA indicates only that Congress intended to clearly abrogate Eleventh Amendment immunity in light of the Supreme Court's holding in *Atascadero*. *See, e.g.*, S. Rep. No. 101-116, at 86 (1990) (noting the immunity provision "is included in order to comply with the standards set forth in *Atascadero*"). The legislative history of 42 U.S.C § 2000d-7, which was passed the year after *Atascadero*, similarly demonstrates that Congress was solely focused on undoing the holding in that case. *See, e.g.*, 132 Cong. Rec. S15100-01 (daily ed. Oct. 3, 1986) (statements of Sens. Weicker, Cranston, Hatch) (reflecting an intent to

11

overcome *Atascadero*). And the House and Senate Reports with respect to the Rehabilitation Act likewise reveal no discussion of legislative immunity. *See* S. Rep. 93-318 (1973); H.R. Conf. Rep. No. 93-500 (1973).

There is, in other words, no indication in the text of the ADA or Rehabilitation Act or the relevant legislative histories that Congress clearly intended to abrogate legislative immunity when it passed either statute. *See Pulliam*, 466 U.S. at 529; *accord Hutto*, 437 U.S. at 694. Because the panel's conclusion otherwise overlooked or misapplied binding Supreme Court precedent, en banc review is warranted.

## II. Whether the ADA and Rehabilitation Act abrogate legislative immunity is a question of exceptional importance.

In the wake of the panel's decision, no state, regional, or local actor in New Hampshire, Maine, Massachusetts, Rhode Island, or Puerto Rico enjoys legislative immunity on claims brought under the ADA or Rehabilitation Act. Nor do state entities that might previously have been able to invoke legislative immunity, including state legislatures and their committees, state courts, or

state agencies. *See Consumers Union*, 446 U.S. at 733–34. Instead, individuals and entities sued under the ADA or Rehabilitation Act for activities undertaken in a legislative capacity are subject both to "the consequences of litigation's results" and "the burden of defending themselves." *Id.* at 732. These are not idle concerns.

The panel's decision threatens to conflict with state constitutional provisions governing legislative procedures. Significant remote participation in House floor sessions may present these concerns. Legislative bodies conduct the business of state government in public where citizens may fully observe the proceedings, including debate, amendment, and voting. Images of dozens of state representatives on a monitor on a House floor, where 300 additional representatives are present and conducting state business, promises to make public scrutiny of those remote participants exceptionally difficult and does little to ensure that the business they are conducting is not being unduly influenced or interfered with by the actions of others.

The panel's decision also promises to place internal disputes over legislative procedures under the oversight of federal courts.

13

Under the panel's decision, the ADA and Rehabilitation Act pro-
vide an avenue to have federal courts control when legislative ses-
sions occur, how people participate in those sessions, and the
manner in which legislators debate and vote on bills. For instance,
a legislator suffering from PTSD, anxiety, and depression can
maintain a lawsuit requiring that the Speaker unilaterally relax
the rules to allow her to send an aide to debate and possibly vote
on her behalf when she is unable to attend herself. So, too, can a
legislator seeking to require an important vote to be rescheduled
because it conflicts with a regularly scheduled counseling ap-
pointment or to request a late start to legislative sessions due to a
particular medical condition. These are but two examples of the
myriad potential lawsuits that state officials now face in light of
the panel's decision.

That many such suits might ultimately fail on the merits is
cold comfort for the legislators and staff who have to defend them
while attending to their other legislative duties. Even meritless
suits can "create[] a distraction and force[] legislators to divert
time, energy, and attention from their legislative tasks to defend

14

the litigation." *Consumers Union*, 446 U.S. at 733 (cleaned up). Accordingly, legislative immunity's value comes in no small part from the fact it offers protection "not only from liability but from suit." *Romero-Barcelo v. Hernandez-Agosto*, 75 F.3d 23, 28 (1st Cir. 1996). In light of the panel's decision, that protection no longer exists in the First Circuit for the broad swath federal claims.

Relatedly, the panel's decision threatens to embroil state legislators (and federal courts) in "political wars of attrition in which [political] opponents try to defeat [each other] through litigation rather than at the ballot box." *E.E.O.C. v. Wash. Suburban Sanitary Comm'n*, 632 F.3d 174, 181 (4th Cir. 2011). There shades of that in this lawsuit. The plaintiffs did not bring this action when their political party held a legislative majority, even though legislative sessions continued to occur in person during that period. Rather, they only filed *after* they failed several times to get the relief they sought through the normal legislative process. They have further peppered their filings in both the district court and this Court with assertions that the Speaker was enforcing the prohibition for partisan advantage. In *Tenney*, the Supreme Court ad-

monished that federal courts "are not the place for such [political] controversies." 341 U.S. at 378. Short of heeding this admonition, the panel's opinion invites federal-court oversight of state political disputes under the guise of ADA and Rehabilitation Act claims.

It also bears emphasizing that the panel did not merely reach "a matter of first impression" by concluding that the ADA and Rehabilitation Act abrogate legislative immunity. *See Cushing*, 2021 WL 1310839, at *3. Rather, this Court is now the first federal court in the country to hold that a congressional act abrogated legislative immunity. Several federal courts have reached the opposite conclusion when considering other federal statutes. For instance, the Ninth Circuit concluded that Congress did not "express[] a clear intent to abrogate legislator's common-law immunity" when it passed the Racketeering Influenced and Corrupt Organizations Act (RICO). *Chappell*, 73 F.3d at 919. The court noted that RICO "says nothing about abrogating legislative immunity, and neither does the history behind it." *Id.* at 924. The court emphasized that "[i]n determining whether Congress intended to abrogate legislative immunity, [a court] must still find

16

*some* evidence of intent." *Id.* (emphasis in original). Similarly, at least two federal district courts have held that the provision of the Voting Rights Act formally codified at 42 U.S.C § 1973 did not abrogate legislative immunity even though it applied to "any State or political subdivision." *See Hispanos Unidos*, 314 F. Supp. 2d at 505; *Latino Pol. Action Comm., Inc.,* 581 F. Supp. at 483. The panel's decision conflicts with the reasoning employed in these cases.

The panel's suggestion that Congress intended the ADA and Rehabilitation Act to abrogate "any other asserted bar" is likewise in tension with decisions from several other federal courts. *See Cushing*, 2021 WL 1310839, at *4. For example, the Third Circuit concluded in *Duffy v. Freed* that the ADA does not abrogate prosecutorial immunity. 452 F. App'x at 202. In *Bartell v. Lohiser*, the Sixth Circuit similarly rejected the contention that, "under the ADA and the Rehabilitation Act, Congress specifically abrogated qualified immunity protections for states and state agencies." 215 F.3d at 555 n.1; *see id.* (collecting cases). Multiple district courts have likewise held that Congress did not intend to abrogate judicial immunity when it passed the ADA. *See, e.g.*, *Nemcik*, 2019 WL

17

720993, at *3 (N.D. Cal. Feb. 20, 2019); *Stebbins*, 2015 WL 5996295, at *3. Under the panel's decision, however, all of these doctrines appear to give way to the ADA and Rehabilitation Act. *See Cushing*, 2021 WL 1310839, at *4.

In sum, the panel's decision addresses a question of exceptional importance in a manner that invites judicial oversight of state legislative functions and threatens to embroil federal courts in ongoing state political disputes. The reasoning the panel employed not only conflicts with Supreme Court precedent, but also with the decisions of a number of other federal courts, including multiple courts of appeals, addressing similar issues. For these additional reasons, en banc review is warranted in this case.

III. **Alternatively, the panel should have remanded this matter to district court to determine in the first instance whether Congress had the power to abrogate legislative immunity under the circumstances presented in this case.**

Assuming *dubitante* that the panel correctly concluded that Congress intended the ADA and Rehabilitation Act to abrogate legislative immunity, its analysis was still incomplete. In *Tenney*, the Supreme Court expressed skepticism that Congress "has con-

18

stitutional power to limit the freedom of State legislators acting within their traditional sphere." 341 U.S. at 376. The Court also recognized that the protection legislative immunity affords is at its zenith when state legislators are acting within their legitimate legislative spheres. *See id.* at 378. While the Court has since suggested that Congress can abrogate legislative immunity by expressing a "clear legislative intent to do so," *Pulliam*, 466 U.S. at 529, it has never addressed whether there are constitutional limits on that power. Nor has the Court defined the outer bounds of legislative immunity, including whether there is any context in which legislative immunity does not apply to the enactment and enforcement of a facially neutral rule of procedure. *See Nat'l Ass'n of Soc. Workers v. Harwood*, 69 F.3d 622, 634–35 (1st Cir. 1995) (noting that the Supreme Court left open the possibility that there are outer bounds to legislative immunity in *Kilbourn v. Thompson*, 103 U.S. 168, 204 (1880)).

To the extent the ADA or Rehabilitation Act evince a "clear legislative intent" to abrogate legislative immunity, *Pulliam*, 466 U.S. at 529, then this matter should be remanded to the district

court to determine in the first instance whether Congress has the constitutional power to abrogate legislative immunity for suits such as this one. This Court has observed that "a legislature's House is its castle," *Harwood*, 69 F.3d at 632, and that, "[a]s a rule, a legislature's regulation of the atmosphere in which it conducts its core legislative activities—debating, voting, passing legislation, and the like—is part and parcel of the legislative process, and, hence, not subject to a judicial veto," *id.* at 635. In light of these observations, there is at least a question whether, intent notwithstanding, Congress has the power to subject state legislators and legislatures to federal lawsuits challenging the very procedures by which they govern legislative sessions. This question should be resolved before those procedures are subject to "outside interference" and state legislators throughout the First Circuit, including the Speaker, must "divert their time, energy, and attention from their legislative tasks to defend the litigation." *See Consumers Union*, 446 U.S. at 731–33.

## <u>CONCLUSION</u>

The panel's decision in this case conflicts with Supreme Court precedent. The proceeding also involves a question of exceptional importance. Accordingly, for all of the reasons stated above, this Court should rehear this case en banc.

Respectfully submitted,

SHERMAN PACKARD, IN HIS OFFICIAL CAPACITY AS SPEAKER OF THE NEW HAMPSHIRE HOUSE OF REPRESENTATIVES

By his attorney

THE OFFICE OF THE NEW HAMPSHIRE ATTORNEY GENERAL

April 19, 2021

/s/ *Samuel Garland*
Anthony J. Galdieri, No. 1175480
Senior Assistant Attorney General
Samuel R.V. Garland, No. 1189913
Jennifer S. Ramsey, No. 1190982
Assistant Attorneys General
N.H Department of Justice
Civil Bureau
33 Capitol Street
Concord, N.H.  03301-6397
(603) 271-3650
anthony.galdieri@doj.nh.gov
samuel.garland@doj.nh.gov
jennifer.ramsey@doj.nh.gov

21

## **CERTIFICATE OF COMPLIANCE**

This document complies with Fed. R. App. P. 35(b)(2)(a), because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), it contains 3,662 words.  This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared with a proportionally spaced typeface using Microsoft Word 2016 in 14-point Century Schoolbook font.


April 19, 2021                    */s/Samuel Garland*_____
                                       Samuel R.V. Garland, No. 1189913

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 19, 2021, I electronically filed the foregoing document with the United States Court of Appeals for the First Circuit using the CM/ECF system. I certify that the following parties or their counsel of record are registered as ECF filers and will be served via the CM/ECF System: S. Amy Spencer, William E. Christie, Israel F. Piedra, and Paul J. Twomey.

April 19, 2021                  /s/*Samuel Garland*
                                Samuel R.V. Garland, No. 1189913